**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0383n.06

No. 19-1802

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| GARNER PROPERTIES & MANAGEMENT, LLC, a Michigan limited liability company, individually and as the representative of a class of similarly situated persons, | ) ) ) ) ) | **FILED** Jun 26, 2020 DEBORAH S. HUNT, Clerk |
| **Plaintiff-Appellant,** | ) ) | **ON APPEAL** FROM THE THE UNITED STATES DISTRICT |
| v. | ) ) ) | COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| MARBLECAST OF MICHIGAN, INC., | ) ) | **OPINION** |
| **Defendant,** | ) ) | |
| AMERICAN WOODMARK CORPORATION, | ) ) | |
| **Defendant-Appellee.** | ) ) ) | |

BEFORE: NORRIS, DONALD, and NALBANDIAN, Circuit Judges.

**PER CURIAM.** The Telephone Consumer Protection Act of 1991 ("TCPA") prohibits the "use [of] any telephone facsimile machine . . . to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The question in this appeal is whether defendant American Woodmark Corporation ("Woodmark"), a cabinet manufacturer located in Virginia, qualifies as a "sender" despite having neither known of, nor authorized, the sending of an unsolicited fax that mentioned one of its product lines. The district court concluded that it did not and granted summary judgment. *Garner Props. & Mgmt., LLC v. Marblecast of Mich., Inc.*, No. 17-11439, 2018 WL 6788013 (E.D. Mich. Dec. 16, 2018). Plaintiff Garner Properties & Management, LLC ("Garner Properties"), which received the offending fax, moved the district

court to certify its judgment for appeal pursuant to Federal Rule of Civil Procedure 54(b). The district court granted the motion.

In 2011, Woodmark and co-defendant Marblecast of Michigan, Inc. ("Marblecast") entered into a marketing agreement. Marblecast is a contractor that sells and installs kitchen and bath products. The agreement authorized Marblecast to market Waypoint Cabinetry, a line of kitchen and bathroom cabinets manufactured by Woodmark. According to its terms, Marblecast "shall use its best efforts to promote, maintain and increase sales of Products." (R. 52-1, Marketing and Display Agreement, Page ID # 5869.) Addendum A of the agreement provides that Woodmark must reimburse Marblecast for certain advertising expenses, which include TV, radio, print, and yellow pages advertising. Faxes are not specifically mentioned in the addendum.

During his deposition, Walter Olejniczak, Marblecast's founder and owner, testified that his company hired a fax broadcaster, jBlast, to promote his business. According to records maintained by jBlast, it sent a total of fifteen unsolicited faxes to Garner Properties, one of which was attached as an exhibit to the complaint. While there is no mention of Woodmark, the fax refers to Waypoint Cabinetry as available through Marblecast at a 65% discount. According to the deposition of Christopher Garner, the owner of Garner Properties, he received the offending fax and referred it to his attorneys.

Marblecast selected Garner Properties as a recipient of its advertising faxes because it was listed in The Blue Book Building and Construction Network, referred to as "the blue book." Mr. Olejniczak testified that he assumed those entities, which paid to be listed, desired to be contacted for prospective business. Garner Properties's fax number was listed in the blue book.

A basic purpose of the TCPA is to prevent senders of unsolicited faxes from shifting the advertising costs to the recipients. H.R. Rep. No. 102-317, 1991 WL 245201, at 10. Fifteen years

2

after the enactment of the TCPA, the FCC promulgated a regulation defining the term "sender" as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). Plaintiff contends that the fax at issue falls within this definition because it was sent on Woodmark's "behalf" and the company's "goods" were "advertised or promoted in the unsolicited advertisement."

As already mentioned, the district court granted summary judgment to Woodmark, relying upon a recent decision of this court: *Health One Medical Center, Eastpointe P.L.L.C. v. Mohawk, Inc.* ("*Health One*"), 889 F.3d 800 (6th Cir. 2018). The district court reasoned as follows:

> In *Health One*, the Sixth Circuit held that an innocent party cannot be liable under the TCPA just because its goods were advertised or promoted in an unsolicited fax advertisement. *Id.* at 802. Health One filed suit against pharmaceutical wholesalers and manufacturers, alleging that both violated the TCPA by sending unsolicited junk faxes that listed prices for the manufacturers' pharmaceuticals. *Id.* at 801. The manufacturers filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that they did not "send" the faxes under the TCPA because they knew nothing about them. *Id.*

> Like Garner, Health One argued that [two prior Sixth Circuit decisions] interpreted the applicable FCC regulation as creating a strict liability standard for entities whose goods or services were advertised in an unsolicited junk fax. *Id.* As such, Health One contended, the defendant manufacturers were liable under the TCPA, lack of knowledge notwithstanding. *Id.*

> The Court began by noting that Health One read the 2006 FCC regulation "woefully out of context." *Id.* "What matters is that—read in the context of the statute itself—the regulation does not purport to impose liability upon parties that did not 'send' the fax at all." *Id.* American Woodmark—like the defendants in Health One—neither dispatched the faxes nor caused them to be sent.

> The *Health One* Court also cited [the two prior decisions], reconciling the three holdings by noting that "[n]either of the cases . . . support [sic] a different result here. In both those cases the defendant in fact hired a fax broadcaster to send out the junk faxes. In neither case did we hold . . . that an innocent party . . . could by some legal alchemy be held liable for having 'sent' the faxes." *Id.*

> . . . .

3

Todd Sabine, vice president of sales and marketing for American Woodmark's dealer distributor channel, testified that Marblecast did not discuss the Fax with anyone at American Woodmark before it was sent. Moreover, Walter Olejniczak, founder and owner of Marblecast, testified that American Woodmark had no independent knowledge that Marblecast was sending the Fax. Most importantly, Olejniczak testified that the Fax was sent to promote Marblecast's business and that Marblecast highlighted American Woodmark only because "I just happened to put down the company we were working with at that time"; additionally, Olejniczak stated that he "wasn't doing the faxing mostly for [American Woodmark]. The faxing was mainly done for [Marblecast's] cultured marble products, and that's what the faxing basically was for, selling countertops and windowsills." Essentially, Olejniczak's testimony shows that Marblecast would have sent the Fax even had it never agreed to sell American Woodmark's products; in the absence of an agreement with American Woodmark, Marblecast "could have put down Home Depot, could have put down Lowe's . . . could have put down anything."

Given American Woodmark's clear lack of knowledge and involvement—and the evidence showing that Marblecast sent the Fax to advertise its own business and would have sent it even had it never contracted with American Woodmark—no reasonable juror could find that American Woodmark "sent" the Fax, as that term is defined by the TCPA in accordance with the Sixth Circuit's holding in *Health One*. American Woodmark simply did not cause the Fax to be sent.

*Garner Props.*, 2018 WL 6788013, at *2-3.

We agree with the district court's reliance on *Health One*, which takes a straightforward approach to resolving the central issue here: if an entity neither sent an unsolicited fax nor caused it to be sent, then there is no sender liability. 889 F.3d at 802. In short, some level of knowledge that an unsolicited fax has been sent is required for an entity to qualify as a sender under the TCPA.

The judgment is **affirmed**.